UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dusty Lee Dignard,
         Claimant

         v.                              Case No. 25-cv-482-SM-AJ
                                         Opinion No. 2026 DNH 048

Frank Bisignano, Commissioner,
Social Security Administration,
         Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Dusty Lee Dignard, moves to reverse or vacate the Commissioner's decision denying her applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI.  See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act").  The Commissioner objects and moves for an order affirming his decision.

For the reasons discussed, claimant's motion is denied and the Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

In May of 2022, claimant protectively filed an application for Disability Insurance Benefits ("DIB") and in January of 2017, she protectively filed an application for Supplemental Security Income ("SSI").  In both applications, she alleged that she was disabled and had been unable to work since February 1, 2020.  She was 31 years old at the time and had acquired sufficient quarters of coverage to remain insured through December 31, 2025.  After claimant's applications were denied initially and again on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ").

On August 21, 2024, claimant, her attorney, and an impartial vocational expert appeared by video before an ALJ, who considered claimant's applications de novo.  Subsequently, the ALJ who presided over that hearing became unavailable and the matter was transferred to a different ALJ.  After considering the record evidence and the transcript of the hearing, the newly-assigned ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision (October 25, 2024).  Claimant then requested review by the Appeals Council.  That request was denied.  Accordingly, the ALJ's denial of

claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and that he denied her due process by failing to convene a second evidentiary hearing.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 4). In response, the Commissioner filed a "Motion for an Order to Affirm the Commissioner's Decision" (document no. 5). Those motions are pending.

## II. Factual Background.

A detailed factual background can be found in claimant's statement of facts (document no. 4-2) and the Commissioner's supplemental statement of facts (document no. 6). Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

## I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a

3

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, then, it is something less than a preponderance of the evidence. So, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. See Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

4

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairments prevent her from performing her former type of work. See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512, 404.1560, 416.912, and 416.960.

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the claimant's testimony or that of other witnesses; and (3) the claimant's educational background,

age, and work experience.  See, e.g., <u>Avery v. Secretary of Health & Human Services</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

### Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  <u>See generally</u> <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24 (2003).  Accordingly, he first determined that

claimant had not been engaged in substantial gainful employment since her alleged onset of disability: February 1, 2020. Admin. Rec. at 19. Next, he concluded that claimant suffers from the following severe impairments: "cutaneous lupus, fibromyalgia, obesity, major depressive disorder, panic disorder, and attention deficit hyperactivity disorder (ADHD)." Id. at 20. But, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal any of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 21. Claimant does not object to any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of light work, subject to the following limitations: "she can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs; can occasionally stoop, kneel, crouch, crawl or balance; and is limited to simple, routine tasks without high production demands." Id. at 23. In light of those restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work. Id. at 28. See also Id. at 75-77 (vocational expert's testimony about claimant's work history as a hotel housecleaner/ waitress and a fast-food worker).

7

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of the vocational expert, the ALJ concluded that, "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Id. at 28.  See also Admin. Rec. at 74-82 (testimony of the vocational expert).  Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

**Discussion**

Claimant challenges the ALJ's decision on two grounds, asserting that he erred: first, by failing to adequately support his decision to discount the opinions of claimant's treating therapist and her treating rheumatologist; and, second, by failing to give claimant a (second) hearing on her appeal of the denial of her applications for benefits (recall that after one ALJ did afford claimant such a hearing, claimant's case was transferred to a second ALJ who concluded - at least implicitly - that another hearing was not necessary).

I.   <u>Opinion Evidence.</u>

Claimant's medical history is fairly lengthy and the record is substantial (at more than 1,400 pages).  But, the parties focus almost exclusively on the medical opinions rendered by six medical professionals.  Two were claimant's treating providers: Daniel Kunz, D.O., claimant's rheumatologist, and Joanne Spilios, LCMHC, claimant's therapist.  Four were state agency medical experts who reviewed claimant's medical records both initially and on reconsideration to determine her level of disability: two psychologists (Deborah Zera and David Bann) and two internists (Dr. Mary Ann Nicastro and Dr. King Leong).[1]

A.   Claimant's Rheumatologist.

Dr. Kunz completed a "Physical Residual Functional Capacity Questionnaire" in which he opined that claimant's pain would

---

[1]     As explained by the Social Security Administration, "Most Social Security disability claims are initially processed through a network of local Social Security Administration (SSA) field offices and State agencies (usually called Disability Determination Services or DDSs). . .   The DDSs, which are fully funded by the Federal Government, are State agencies responsible for developing medical evidence and making the initial determination on whether or not a claimant is disabled or blind under the law. . . . After completing its development of the evidence, trained staff at the DDS makes the initial disability determination.  Then, the DDS returns the case to the field office for appropriate action."  SSA, "Disability Determination Process."  Available at: https://www.ssa.gov/disability/ determination.htm

"constantly" interfere with the attention and concentration necessary to sustain simple, repetitive work tasks; she was incapable of even "low stress" work; she could not sit for more than 30 minutes at a time or stand for more than 10 minutes; she could sit and stand/walk for fewer than two hours in an eight-hour workday; and she would require a break every 30 minutes. Admin. Rec. at 1409-12. But, the ALJ supportably found those opinions unpersuasive because they are "inconsistent with Dr. Kunz's own treatment records showing that the claimant's symptoms are generally well-controlled with medication with only periodic fibromyalgia flares and little indication of significant ongoing lupus symptoms." Id. at 27. See generally 20 C.F.R. § 404.1520c(c)(1) and (2) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions, the more persuasive the medical opinions will be. The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.") (cleaned up).

As the ALJ observed, Dr. Kuntz's treatment notes are not consistent with the fairly extreme limitations suggested in his Physical Residual Functional Capacity Questionnaire. See Dr. Kunz's Treatment Notes, Admin. Rec. at 1405 (May of 2021,

10

approximately 15 months after claimant's alleged onset of disability: "Fibromyalgia.  Overall, she feels fantastic.  She tells me she was in Florida in the sun and exercising and she really had no pain outside of the tight neck muscles and carpal tunnel.  She felt great . . . Cutaneous lupus Doing great.  Asymptomatic. Continues hydroxychloroquine."); 1400 (February, 2022: "No flares of cutaneous lupus.  Doing well on hydroxychloroquine" and "She was doing well in the summer [with fibromyalgia symptoms] and after I last saw her but now flaring up."); 1394 (May, 2022: "Doing well.  No flares of cutaneous lupus on HCQ.  Asymptomatic" and, with respect to fibromyalgia, "She tells me she is 'holding my own.'  Taking methocarbamol once or twice daily which really helps when needed.  She is active working in the garden."); 1388 (June, 2022: "She reports mild flares [of lupus].  She tells me she has been in the sun gardening, does put on sunblock multiple times per day, but is exposing herself to the sun" and "Continues to have intermittent episodes of diffuse paresthesias [related to fibromyalgia], which then turns to pain and resolved within a few hours.  Not constant."); and 1375 (February, 2023: "no flares of cutaneous lupus on HCQ. Doing well here.  Fibromyalgia overall better except for her back.  She reports mental health is better, though still is anxious and gets attacks, overall improved.  She is exercising daily and doing yoga in the morning.").

11

In contrast to Dr. Kuz's opinions concerning claimant's residual functional capacity, the ALJ noted that two state agency physicians thoroughly reviewed claimant's treatment records, her subjective complaints of pain, and her activities of daily living.  Both documented their findings and conclusions, and both concluded that claimant retained the ability to perform light work, despite her impairments.  Although the ALJ discounted those opinions somewhat (based upon claimant's subjective complaint's of pain "and medical evidence showing some worsening of symptoms during flares" id. at 26), he noted that those opinions were well-supported by explanations, mutually consistent, and largely consistent with the overall record.  Id.  See also Initial Residual Functional Capacity Determination made by Dr. Mary Nicastro, Admin. Rec. at 102-110; Determination on Reconsideration by Dr. King Leong, id. at 128-35.

There is certainly substantial evidence in the record to support the medical opinions of the state agency physicians as well as the ALJ's decision to afford them fairly significant weight.  There is also substantial evidence to support the ALJ's decision to afford less weight to the somewhat extreme opinions expressed in Dr. Kunz's Functional Capacity Questionnaire.

B.  Claimant's Mental Health Counselor.

Joanne Spilios, LCMHC, completed a "Mental Residual Functional Capacity Assessment" of claimant on August 14, 2024. Admin. Rec. at 1413-16.  In it, she opined that claimant had "mild" to "moderate" impairments affecting understanding and memory, "marked" to "extreme" impairments affecting sustained concentration and persistence, "mild" to "moderate" impairments affecting social interaction, and an "extreme" inability to tolerate normal levels of stress.  She also opined that claimant's mental impairments would substantially interfere with her ability to work on a sustained basis at least 20 percent of the time and she would likely miss work 4-5 days each month because of those mental impairments.  Again, however, the ALJ found little support for such significant limitations in claimant's medical records.  Id. at 27 (noting that Ms. Spilios "provides little support for these extreme limitations, and the limitations are inconsistent with the claimant's mostly normal mental status findings, her treatment notes reflecting the claimant's good response to treatment, and with the claimant's demonstrated ability to perform her daily activities, including gardening, spending time with friends, travelling to Florida, and serving as a Girl Scout co-leader.").  See generally Claimant's Treatment Records from Seacoast Mental Health Center, Admin. Rec. at 1307-70.

13

After explaining his reasons for discounting the opinions of Ms. Spilios, the ALJ supportably found the opinions of the state agency mental health examiners largely persuasive.

> David Bann and Deborah Zera evaluated the claimant's mental health records on behalf of the State agency and found that the claimant has moderate limitations in her ability to concentrate, persist, and maintain pace, and otherwise has mild mental limitations. They further found that the claimant may have some disruptions in a work-day or work-week related to psychological symptoms but that any such disruptions "would not likely be more than reasonable." The opinions of Drs. Bann and Zera are generally persuasive. Their opinions are mutually consistent, supported by explanations, and generally consistent with the overall record, including the claimant's good response to treatment with mental medication and therapy, and her ability to perform her daily activities.

Admin. Rec. at 27 (citations omitted). See also Initial Psychological Review by David Bann, id. at 115-26; and Determination on Reconsideration by Deborah Zera, id. at 128-32.

Given the state of the record, the court cannot conclude that the ALJ erred by discounting the somewhat extreme opinions of claimant's treating providers and, instead, largely adopting the findings of the four state agency medical experts who reviewed claimant's medical records. The ALJ plausibly and supportably explained why he found those latter opinions to be

14

more consistent with the overall record, as well as the reasons

he found the treating providers' opinions to be inconsistent

with both the overall record and their own treatment notes.

II.   Due Process and a Second Hearing.

As noted above, after claimant was provided with a de novo

hearing before an ALJ, that ALJ became unavailable and the

matter was transferred to a new ALJ.  Claimant asserts, without

developed argument, that the lack of a new hearing before the

second ALJ deprived her of her due process rights.

Specifically, she says:

> Plaintiff was not afforded due process in the
> Commissioner's handling of her case.  The hearing was
> conducted by one ALJ, but the decision was written by
> a separate ALJ at a different hearings office (AR at
> 17).  It is unclear if a draft opinion was ever
> approved by the initial ALJ or not.  The ALJ who
> authored the decision never took the Plaintiff's
> testimony, nor that of the vocational expert who
> testified.  20 CFR § 404.948 and 416.1448 govern
> circumstances in which an ALJ can issue a decision
> without a hearing.  None of those circumstances are
> applicable in the immediate case, violating the
> Plaintiff's due process rights.

Claimant's Memorandum (document no. 4-1) 4.  The regulations

claimant cites do not, however, apply to this situation because

claimant was afforded a hearing.  Rather, the circumstances

presented in this case are governed by the Social Security

Programs Operations Manual System ("POMS"), which provides that,

When an ALJ has held a hearing but has not approved a draft decision, the HOCALJ or other management ALJ may reassign the case with concurrence of the RCALJ or Office of the Chief Administrative Law Judge (OCALJ). When considering whether to reassign a case after a hearing has been held, the HOCALJ or other management ALJ will consider whether the delay in issuing a decision constitutes a detriment to the public. An example of when a delay constitutes a detriment to the public is when the case has been in post-hearing status for an unreasonable period and previous attempts to assist the ALJ with issuing a decision have been unsuccessful.

When the HOCALJ or other management ALJ reassigns a case to a different ALJ after a hearing has been held, the ALJ to whom the case is reassigned will review all the evidence of record, including the audio recording of the hearing.

POMS: HA 01210.055, sect. F.2. ("Reassignment of a Case After a Hearing Has been Held") (available at: https://secure.ssa.gov/poms.nsf/lnx/2501210055). POMS also vests in the newly-assigned ALJ the discretion to determine whether the evidentiary record is sufficient to render a decision or "whether another hearing is necessary." Id.

Here, it is plain from the ALJ's decision that he reviewed the entire record, including the transcript (or audio recording) of the earlier hearing. See, e.g., Admin. Rec. at 23-24 (discussing at some length claimant's testimony at the hearing). And, it is equally plain that he concluded - albeit implicitly - that a second hearing was not necessary. Neither the

16

Constitution nor the applicable regulations or SSA operations manual required anything more.  See generally Flatford v. Chater, 93 F.3d 1296 (6th Cir. 1996) (discussing the application of the Fifth Amendment's Due Process clause in the context of Social Security hearings before an ALJ); Green v. Comm'r of Soc. Sec., No. 1:13 CV 2356, 2015 WL 779043 (N.D. Ohio Feb. 24, 2015) (same).

**Conclusion**

Judicial review of the ALJ's decision is both limited and deferential.  This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled.  Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d

529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and the claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled, as that term is used in the Act, at any time prior to the date of the ALJ's decision (October 25, 2024). The ALJ's determination of claimant's RFC, his stated reasons for crediting some medical opinions while discounting others, and his analysis of claimant's subjective allegations of disabling symptoms are well-reasoned and supported by substantial evidence. While the record might arguably support a different conclusion, there is clearly substantial evidence to support the ALJ's findings.

Finally, the court concludes that claimant's due process rights were not violated when the ALJ to whom this case was transferred issued his decision without convening a second evidentiary hearing.

For the foregoing reasons, as well as those set forth in the Commissioner's legal memorandum, claimant's Motion for Order Reversing the Decision of the Commissioner (**document no. 4**) is denied, and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (**document no. 5**) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 29, 2026

cc:  Counsel of Record